UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

IN ADMIRALTY

AXIS Insurance Company,

    Plaintiff,

v.

Thelma Padilla and Jonathan Turcios as Co-Personal Representatives of the Estate of Jose Turcios, Thelma Padilla individually, Martha Marenco as Personal Representative of the Estate of Jorge Marenco, Roberto Perez, Aracelys Vera, Brittany Garcia, Jennifer Perez, Francis Izquierdo,

    Defendants.

_____/

## COMPLAINT FOR INTERPLEADER

COMES NOW the Plaintiff, AXIS Insurance Company ("Plaintiff" or the "Stakeholder"), hereby files this action against Thelma Padilla and Jonathan Turcios as Co-Personal Representatives of the Estate of Jose Turcios, Thelma Padilla, individually, Roberto Perez, Aracelys Vera, Brittany Garcia, Jennifer Perez, and Francis Izquierdo (collectively, the "Defendants"), and alleges:

1. This is an action for interpleader pursuant to Federal Rule of Civil Procedure 22 and 28 U.S.C. §1335, involving a marine insurance policy, and is

brought within the admiralty and maritime jurisdiction of this Court as contemplated by 28 U.S.C. §1333 and Rule 9(h) of the Federal Rules of Civil Procedure.

2. The Stakeholder is in the business of providing marine liability insurance.

3. Stakeholder is organized and incorporated under the laws of the state of Illinois with a principal place of business in Georgia. Therefore, pursuant to 28 U.S.C. §1332(c)(1), the Stakeholder is deemed a citizen of the state of Illinois and a citizen of the state of Georgia.

4. The Stakeholder issued a marine insurance policy, SkiSafe Seafarer Policy Number S38201802, to Jorge Marenco ("Marenco" or the "Insured"), for his 2022 17' Key West Center Console 1720 (the "Key West"), effective June 9, 2023 to June 9, 2024, with Part E: Liability Coverage limits of $25,000 and Part F: Medical Payments Coverage limits of $25,000 (the "Policy"). A true and correct copy of the Policy is attached to this Complaint as Exhibit 1.

5. The Policy provides that any payment made under Part F: Medical Payments Coverage shall reduce the Part E: Liability Coverage limits by the amount of such payments.

6. On April 21, 2024, during its operation on navigable waters, the Key West collided with a 2019 51-foot Azimut Cabin Cruiser (the "Cabin Cruiser") in Biscayne Bay, approximately four miles east of Black Point (the "Incident"). As a

result of the Incident, Marenco and Jose Turcios, a passenger on the Key West, were killed.

7. At the time of his death, Jose Turcios was a Texas citizen who was domiciled in Beaumont, Jefferson County, Texas.  Pursuant to 28 U.S.C. §1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent…." Therefore, the Estate of Jose Turcios is a citizen of Texas.

8. At the time of his death, Jorge Marenco was a Florida Citizen who was domiciled in Miami, Miami-Dade County, Florida. Pursuant to 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent…." Therefore, the Estate of Jorge Marenco is a citizen of Florida.

9. Also onboard the Key West at the time of the Incident was Thelma Padilla, a Texas citizen who was domiciled in Beaumont, Jefferson County, Texas.

10. Also onboard the Key West at the time of the Incident was Martha Marenco, a Florida citizen who is domiciled in Miami, Miami-Dade County, Florida.

11. Roberto Perez, a Florida citizen who was domiciled in Miami, Miami-Dade County, Florida, was traveling on the Cabin Cruiser at the time of the Incident.

12. Aracelys Vera, a Florida citizen who was domiciled in Miami, Miami-Dade County, Florida, was traveling on the Cabin Cruiser at the time of the Incident.

13. Brittany Garcia, a Florida citizen who was domiciled in Loxahatchee, Palm Beach County, Florida, was traveling on the Cabin Cruiser at the time of the Incident.

14. Jennifer Perez, a Florida citizen who was domiciled in Miami, Miami-Dade County, Florida, was traveling on the Cabin Cruiser at the time of the Incident.

15. Francis Izquierdo, a Florida citizen who was domiciled in Miami, Miami-Dade County, Florida, was traveling on the Cabin Cruiser at the time of the Incident.

16. At the time of the Incident, three juveniles were present on the Key West, (M.T., M.D., and M.D.) and two juveniles were present on the Cabin Cruiser (E.G. and S.O.). Despite its diligent efforts, to date, the Stakeholder has been unable to determine contact information for the juveniles. Therefore, the Stakeholder reserves the right to interplead these individuals into this matter in the future if needed.

17. Following the Incident, on July 10, 2024, a letter of representation was received by Stakeholder from attorney Carlos Silva of Silva & Silva, who purported to represent both the Estate of Marenco and the Estate of Turcios in connection with Incident.

18. Under Part E: Liability Coverage, the Policy provides Stakeholder will "will pay sums which you or a Covered Person become legally obligated to pay as a

result of the ownership, operation or maintenance of your Insured Property because of: … c. bodily injury, loss of life[.]"

19. Coverage under Part E: Liability Coverage is excluded under Exclusion a. for claims for bodily injury to the named insured, the named insured's spouse, or any other persons who reside in the named insured's household and under Exclusion b. for the named insured's liability to his spouse or any other person who resides in his household.

20. Under Part F: Medical Payments Coverage, the Policy provides Stakeholder "will pay for any necessary and reasonable medical, ambulance, hospital, professional nursing and funeral costs which arise due to bodily injury" for "persons injured while in, upon, boarding, leaving, or involved in an accident with the Boat."

21. Coverage under Part F: Medical Payments Coverage is excluded under Exclusion a. for the named insured, the named insured's spouse or other persons residing in the named insured's household.

22. Jorge Marenco is the named insured under the Policy.

23. The Estate of Jorge Marenco is therefore excluded from coverage under Part E: Liability Coverage and Part F: Medical Payment Coverage.

24. Silva & Silva provided Stakeholder with a receipt for Turcios's funeral in the amount of $4,608.00.

25. Silva & Silva provided Stakeholder with a bill from Jackson Memorial Health System indicating that Turcios incurred $4,078.00 in total charges on April 21, 2024, as well as a bill for $590.00 from JMG ER Physicians for services Turcios incurred on April 21, 2024.

26. Based on the information Silva & Silva provided, the Turcios Estate is potentially entitled to $9,276 under Part F: Medical Payments Coverage, which would reduce the remaining limits available under Part E: Liability Coverage and Part F: Medical Payment Coverage, to $15,724.00.

27. Any person injured on the Key West or the Cabin Cruiser can seek potential payment under both Part E: Liability Coverage and Part F: Medical Payments Coverage, provided coverage is not otherwise excluded.

28. Given the low Policy limits and the fatalities, Stakeholder made the decision to distribute the $25,000, regardless of fault for the Incident, and obtain releases for its insured, the Marenco Estate.

29. Based on Silva's correspondence, it appeared a claim was only being made for Turcios' death and Silva's office advised the Turcios Estate would accept the tender of the $25,000 Policy limits.

30. However, given the 12 potential additional claims that could be made under Part E: Liability Coverage and/or Part F: Medical Payments Coverage by the other individuals involved in the Incident, Stakeholder attempted to eliminate the

6

Marenco Estate's exposure by coordinating a Global Settlement Conference (the "Conference").

31. The purpose of the conference was to give notice and opportunity for any and all potential claimants to come forward with their claims and, if possible, agree on a distribution of the $25,000 Policy limits.

32. During the process of inviting all interested parties to attend the conference, Stakeholder's counsel reached out to the probate attorney for the Marenco Estate, Paul Cowan. Cowan advised Stakeholder to contact the Marenco Estate's other counsel, Benjamin Fernandez with Silva & Silva, for any information on this matter.

33. Fernandez then advised that Silva & Silva was representing *all* the individuals on the Key West, in addition to both Estates.

34. Fernandez further reported his office had no contact information for the individuals on the Cabin Cruiser.

35. Stakeholder sent correspondence to Fernandez inviting all individuals on the Key West to the Conference.

36. Stakeholder also sent correspondence to the individuals on the Cabin Cruiser using addresses obtained through independent investigation. However, Stakeholder received no response from any of those potential claimants.

37. It thus appeared that only the individuals from the Key West would be present at the Conference, and only the Turcios Estate would be making a claim. However, the Cabin Cruiser individuals were still unaccounted for and could make their claims, if any, *after* the Conference and *after* the Policy limits were distributed.

38. Therefore, on the morning of April 16, 2025, prior to the Conference, Stakeholder sought to confirm the Marenco Estate's informed consent, in writing before tendering policy limits to the Turcios Estate at the Conference, in anticipation that no other claimants would appear. This request for acknowledgment was sent to Fernandez and intended to inform his client, the Marenco Estate, of the potential for additional claims before exhausting limits.

39. Fernandez did not respond.

40. The only party representatives who appeared at the April 16, 2025 Conference were Silva, Fernandez, and counsel for Stakeholder.

41. The Conference lasted approximately 36 minutes, and no tender was accepted on behalf of any party.

42. On May 20, 20205, Silva sent correspondence to Stakeholder's counsel, now identifying *only* as counsel for the Turcios Estate, rejecting the tender.

43. As is the nature of collisions between two vessels, the other individuals present at the time of the Incident *may* still have claims, and they still have time to file such claims.

44. Any claims resulting from the Incident arose during the same effective Policy period, June 9, 2023 to June 9, 2024.

45. The Stakeholder is thus subject to adverse claims since the collective claims by the Defendants, if valid, would be entitled to the tendered limits and, given the nature of the Turcios' Estate's new demands, such claims now exceed the $25,000 combined liability and medical payment coverage limit of the Policy. *See Mem'l Acad., Inc. v. Whls of Fla., LLC*, 2009 U.S. Dist. LEXIS 136941 (Fla. M.D. October 30, 2009) (citing *United States Indus., Inc. v. Laborde*, 794 F. Supp. 454, 459 n.4 (D.P.R. 1992)).

46. Thus, the Stakeholder legitimately fears multiple claims against a single fund.

47. The Stakeholder did not cause any conflicting claims between the Defendants.

48. The Stakeholder has no interest in how the $25,000 Policy limits are apportioned between the Defendants.

49. The Stakeholder seeks to expeditiously resolve <u>all</u> claims in good faith and tender the limits of its Policy, but the Stakeholder cannot determine how the Policy proceeds should be apportioned between any Defendants and doing so prematurely could expose the Stakeholder to multiple liability.

50. This Court has original federal question jurisdiction under Federal Rule of Civil Procedure 22 pursuant to the Admiralty jurisdiction conferred by 28 U.S.C. §1333, as the Policy at issue is a marine contract. This action may be entertained under Rule 22 even though the claims of the conflicting Defendants are not identical and are adverse to and independent of one another.

51. This Court also has jurisdiction pursuant to 28 U.S.C. §1335:

   a. The Stakeholder issued the Policy with combined liability and medical payments coverage limits of $25,000, and whose value is $500 or more.

   b. Defendants, who are from Florida and Texas, are two or more adverse claimants of minimally diverse citizenship pursuant to subsection (a) or (d) of section §1332, who are claiming or *may* claim to be entitled to such money and benefits under the Policy.

   c. With the filing of this action or shortly thereafter, the Stakeholder is also filing a motion with the Court seeking an order granting the Stakeholder leave to deposit the amount at stake into the registry of the Court, pursuant to Fed. R. Civ. P. 67.

52. Venue in this Court is proper under 28 U.S.C. §1397 because Jorge Marenco resided in this district in Miami, Miami-Dade County, Florida, prior to his death and the venue for the Estate of Jorge Marenco is within this district in Miami, Miami-Dade County, Florida.

WHEREFORE, the Stakeholder requests each Defendant be restrained from instituting any action against the Stakeholder for recovery of the Policy benefits; the Defendants be required to interplead and settle among themselves the distribution of the Policy limits, and that the Stakeholder be discharged from all liability and dismissed from this action; and the Court grant any further relief as may be just and proper under the circumstances of this case.

Dated: August 25, 2025       Respectfully submitted,

/s/ *Joseph P. Lang*
Joseph P. Lang, Esq.
Florida Bar No. 1055232
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 S. Wacker Drive-Suite 3600
Chicago, IL  60606
Telephone: (312) 585-1423
jlang@nicolaidesllp.com
pkennedy@nicolaidesllp.com
*Counsel for Plaintiff AXIS Insurance Company*